G. L. MILLER & COMPANY, A CORPORATION, *Plaintiff in Error,* v. CARMICHAEL-McCALLEY COMPANY, A CORPORATION, *Defendant in Error.*

Division B.

Opinion Filed June 5, 1926.

*Price, Price, Neeley & Kehoe,* for Plaintiff;

No appearance for Defendant.

BUFORD, J.—The defendant in error was plaintiff in the court below and filed a declaration in seven counts; the first count after its second amendment was as follows:

''The said Carmichael-McCalley Company is now, and for a long time before and at all times since the 10th day of November, 1917, has been a corporation, with its principal office in the City of Miami, Dade County, Florida, and 'engaged principally in the business of constructing buildings under contract as contractors, and that upon all of the dates set forth herein, the said G. L. Miller & Company was a corporation of the State of Georgia with an office in the City of Miami, Dade County, Florida, and that upon all of said dates, G. L. Miller was the President of said corporation and duly authorized as its President and Agent, to enter into contracts for and in behalf of said corporation, for the construction of apartment houses and other buildings, and to advance money to pay the cost of labor, services and materials necessary and incidental to the construction of said building; and that therefore, to-wit: on or about the 10th day of November, A. D. 1917, the said G. L. Miller & Company, by its President and Agent, G. L. Miller, who was thereunto duly authorized, did enter into a verbal agreement with the said Carmichael-McCalley Company, in and by which it was agreed that the said Carmichael-McCalley Company should construct and complete for the said defendant, an apartment house to be called the Charlemac Apartment house, to be situate on the southwest corner of Avenue 'B' and 6th Street, in the City of Miami, County of Dade and State of Florida, according to the old system naming at that time in use, and now what is known as Southwest Corner of 6th Street and 2nd Avenue, N. E.; and it was then and there agreed that the said Carmichael-McCalley Company was to procure proper plans and specifications for the proposed building from a competent architect, and to procure all of the labor necessary for the plan-

ning and construction thereof, and to secure estimates of all of the materials to be used in the construction of said apartment house, and it was then and there agreed between the parties that the said G. L. Miller & Company would advance, from time to time as the work progressed, the money necessary to pay the architect for his plans, specifications and services, and to pay upon weekly pay-roll for labor used in said construction, and to pay for all supplies and materials used in the construction of said apartment house as the bills therefor became due and payable; and the said G. L. Miller & Company further agreed with the said Carmichael-McCalley Company that upon the completion of said building and after an accounting had been had showing the aggregate cost of the entire construction of said apartment building, including the bill of the architect, the purchase of labor and material entered into the planning and construction thereof, it would pay to the said Carmichael-McCalley Company, a sum amounting to 15% of the entire cost of construction, for their services in the planning, supervision and construction of said building; that acting upon and by virtue of said contract between the parties above referred to, the said Carmichael-McCalley Company proceeded to have plans and specifications prepared by a competent architect, and to secure and make up estimates for the various articles and items entered in the cost of construction of said apartment house, and did secure prices from sundry and several dealers in building materials and supplies, and did secure prices for the cost of all services and work furnished and to be furnished therefor; and that the said G. L. Miller & Company became and are liable. And the said Carmichael-McCalley Company performed all things on their part in behalf of said agreement to be performed and fulfilled, and have always been ready, able and willing to perform the whole of said contract in the time, manner and place stated in pursuance of the said

agreement. That the aforesaid agreement was made be-tween parties for a valuable consideration, to-wit: the mutual covenants, agreements and promises by and between the parties to be done and performed, and for other val-uable consideration, and it was mutually agreed by and between the parties that the planning and construction of said apartment house should be commenced immediately, beginning with the 10th day of November, 1917, and that the construction of said apartment house should be finished within a year from the date of the commencement and construction, of all of which promises the defendant had due notice, but the said defendant contriving and wrong-fully intending to injure said plaintiff, did not nor would, perform its said agreement, nor its said promise and under-taking, and did thereby craftily and subtly, deceive the said plaintiff, Carmichael-McCalley Company, in this to-wit: that the said defendant, after the plaintiff had ordered and received plans, specifications, estimates and bids, as aforesaid, refused and declined to pay for the cost of any labor, materials or services up to that time furnished, although often requested so to do, and declined to pay for any future labor, services or materials, and the said defend-ant would not pay the plaintiff the sum of $50,000.00 or any part thereof; but on the contrary, hitherto wholly neglected and refused so to do, and the said defend-ant, further disregarding its said agreement and its said promise, afterwards, to-wit: on or about the 15th day of January, 1918, did not nor would permit nor suffer, said Carmichael-McCalley Company to proceed with the construction of said apartment house, and then and there wholly hindered and prevented it from so doing, and then and there wrongfully discharged the said Carmichael-McCalley Company from any further perform-ance or completion of its said agreement, and promise and undertaking, whereby the said Carmichael-McCalley Com-

pany has been put to great expense and has lost and been deprived of profits and advantages, which it otherwise might and would have derived and acquired from the completion and construction of said apartment house; wherefore, the plaintiff says that by reason of the premises, it is injured and has sustained damages to the amount of $50,000.00, wherefore, plaintiff brings this suit and claims damages in the sum of $50,000.00.''

Demurrer was filed to this count as follows:

''Now comes the defendant in the above styled and entitled cause and interposes the same demurrer to the second amended first count of plaintiff's declaration as was interposed by it to the amended first count of said declaration, which said demurrer is on file and is asked to be taken as a demurrer to said second amended first count of the plaintiff's declaration as aforesaid; and also interposes the same demurrer to each and every count of the declaration as amended, with the exception of the common counts to which pleas have been filed.''

The demurrer was sustained by an order made the 29th day of August, 1922, and thereafter judgment on the demurrer was entered as follows:

''Now, at this time, came on to be heard the petition of the plaintiff for judgment upon demurrer to the second amended first count of the plaintiff's declaration in the above styled and entitled cause, and,

It appearing to the Court from the case papers in said cause that an order was made herein on the 12th day of August, A. D. 1922, sustaining the demurrer to the second amended first count of the plaintiff's said declaration, and that the defendant was allowed until November 1st, 1922, in which to amend the said count to its said declaration as it may be advised;

And it further appearing to the court that the said plaintiff has not amended the said count in his said declaration,

although the time for so amending same has long since expired;

IT IS THEREFORE ORDERED AND CONSIDERED by the Court, upon motion of the defendant, that the defendant do have judgment as against the plaintiff upon said second amended first count of said declaration and that the said plaintiff take nothing by said suit as to the matters and things set forth and averred in and by the said second amended first count of the said declaration, and that the defendant go hence without day as to the matters and things set forth and contained in said count.

It is therefore ordered, adjudged and considered by the Court that the defendant do have judgment as against the plaintiff for all costs incurred by reason of the filing of the said count to the said declaration.

DONE AND ORDERED at Miami, Florida, on this, the 26th day of April, A. D. 1923.''

This left the declaration standing on the common counts as follows:

''SECOND COUNT. And in the like sum of $50,000.00 for money payable by the defendant to the plaintiff for goods bargained and sold by the plaintiff to the defendant.

THIRD COUNT. And in the like sum of $50,000.00 for work done and materials furnished by the plaintiff for the defendant at its request.

FOURTH COUNT. And in the like sum of $50,000.00 for money lent by the plaintiff to the defendant.

FIFTH COUNT. And in the like sum of $50,000.00 for money paid by the plaintiff for the defendant at its request.

SIXTH COUNT. And in the like sum of $50,000.00 for money received by the defendant for the use of the plaintiff.

SEVENTH COUNT. And in the like sum of $50,000.00 for money found to be due from the defendant to the plaintiff on account stated between them.

And the plaintiff claims $50,000.00.''

Trial was had and resulted in a judgment in favor of the plaintiff in the sum of $3,500.00 with interest and costs, from which judgment the defendant brought writ of error to this court, July 30, 1925.

The judgment rendered on the demurrer in this case went to the grounds of recovery and is therefore a judgment on the merits of the cause of action as stated in that count of the declaration to which the demurrer was addressed and is therefore *res judicata*.

Where a judgment rendered on demurrer reaches the merits of the grounds for recovery, such judgment has the same effect as if it had been entered upon the trial of the cause and is final unless set aside or reversed by a court of competent jurisdiction and as long as such judgment continues in force, recovery cannot be had by the plaintiff upon the same grounds stated in the declaration demurred to, either in the same action or in any other action brought to recover upon the identical grounds and based upon the same claim. 15 R. C. L. 986; Dolvin v. American Harrow Co. 125 Ga. 699, 54 Southeastern 706; Brechlin v. Night Hawk Mining Co. 95 Pas. 928; Cain v. Union Cent. Life Ins. Co. 123 Ky. 59, 93 S. E. 622.

The evidence shows that the entire claim for damages in this case was based upon an alleged executory verbal agreement.

There existed a fatal variance between the evidence and the allegations of the declaration.

Where there exists a complete variance between the allegations of the declaration and the proof offered upon the trial it is the duty of the court to direct a verdict in favor of the defendant, unless, the declaration in due course and by proper amendments appears to have been made to meet the proof submitted.

In the instant case the allegations of the declaration upon which the plaintiff went to trial are not supported by the proof and therefore the judgment should be reversed, and it is so ordered.

Reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

BROWN, C. J., AND ELLIS, J., concur in the opinion.